**CHEROKEE WATER COMPANY,**
Appellant,

v.

**Albert Olen FREEMAN, Appellee.**

No. 06–03–00168–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 25, 2004.

Decided Sept. 23, 2004.

Rehearing Overruled Oct. 13, 2004.

H.P. Smead Jr., Smead, Anderson & Dunn, Longview, for appellant.

Chad Dean, Law Office of Chad W. Dean, Henderson, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

In 1948, W.R. and Dessie Freeman (Albert Freeman's parents) conveyed to Cherokee Water Company 48–1/2 acres. Dessie Freeman died in 1987, and W.R.

Freeman died in 1994. Since that time, the Freeman family and Cherokee have had several disputes regarding the property. *See Cherokee Water Co. v. Freeman,* 33 S.W.3d 349 (Tex.App.-Texarkana 2000, no pet.); *Freeman v. Cherokee Water Co.,* 11 S.W.3d 480 (Tex.App.-Texarkana 2000, no pet.).

In this action, Cherokee sued Albert Freeman, demanding possession of a small piece of property adjacent to Lake Cherokee. Freeman claimed that the property was his by adverse possession because he and his forebears had used it for a number of purposes for decades. The jury found that he had adversely possessed the land identified as "Park A Lot" for over ten years and that, because of his or his privies' actions, Cherokee was presumed to have notice of the adverse possession.

Cherokee raises four basic contentions of error. First, it contends the judgment is improper because this lawsuit was barred by res judicata. Second, it contends the evidence is legally and factually insufficient to support the verdict. Third, Cherokee argues that the description of the property in the judgment is insufficient, thus the judgment is void. Fourth, Cherokee argues Freeman did not repudiate Cherokee's ownership of the tract. We affirm the judgment of the trial court.

## I. Res Judicata

Cherokee's res judicata argument is that the ownership of this particular piece of land has been previously litigated (or should have been) and that the trial court erred by failing to render a judgment notwithstanding the verdict (JNOV) in its favor on that issue.

Res judicata, also known as claim preclusion, prevents the relitigation of a finally-adjudicated claim and related matters that should have been litigated in a

prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992).[1] Texas follows the transactional approach to res judicata. *Id.* at 630. This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex.2001); *Barr*, 837 S.W.2d at 630. It requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

## A. Standard of Review

■ Our review on this issue is based on the trial court's overruling of Cherokee's motion for JNOV. We review a denial of a motion for JNOV under a legal sufficiency standard. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex. 1986).

■ A trial court may disregard a jury's verdict and render a JNOV if there is no evidence to support the jury's findings or if a directed verdict would have been proper. *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex.1998). A motion for JNOV should be granted when (1) the evidence is conclusive, and one party is entitled to recover as a matter of law; or (2) a legal principle precludes recovery. *Mancorp, Inc. v. Culpepper*, 802

S.W.2d 226, 227–28 (Tex.1990); *Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 205 (Tex.App.-Dallas 2003, pet. dism'd); *Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 493 (Tex.App.-Texarkana 2002, pet. denied).

■ We view the evidence in the light most favorable to the trial court's findings, considering only the facts and inferences that support them. *Culpepper*, 802 S.W.2d at 227. If more than a scintilla of evidence exists supporting the trial court's findings, the motion for JNOV was properly denied. *Id.* at 228.

## B. Does the Deed for 48–1/2 Acres Include Park A Lot as a Matter of Law

Cherokee argues that the legal principle of res judicata precludes recovery by Freeman because, on May 20, 2002, a judgment was granted which expressly ordered that Cherokee owned title to all the land conveyed pursuant to the W.R. and Dessie Freeman general warranty deed dated May 24, 1948. That deed covered a 48–1/2 acre tract Cherokee claims includes the "Park A Lot" tract that is at issue in this lawsuit. Cherokee argues that, because the ownership of the specific land was decided in the prior lawsuit between the same parties, and because the theory of adverse possession could (and should) have been raised then, res judicata precludes this lawsuit.

The factual question as to whether the tract involved here, Park A Lot, was included in the 48–1/2 acre tract was not presented to the jury in this case. In order for Cherokee to prevail on its JNOV

---

1. Within the general doctrine of res judicata, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). *Barr*, 837 S.W.2d at 628. Because res judicata and collateral estoppel are affirmative defenses, the party asserting them has the burden of pleading and proving the elements of the asserted defense. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex. App.-Houston [14th Dist.] 2000, orig. proceeding) (collateral estoppel); *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (res judicata).

contention, we must find the trial court erred because Cherokee not only provided evidence in support of its res judicata claim, but conclusively proved the claim.

Freeman responds by pointing out: (1) that a fact issue exists regarding conflicting testimony as to whether Park A Lot is actually inside those 48–1/2 acres (with no findings requested or made on that matter); (2) that Park A Lot is not referenced by the prior judgment; and (3) that Freeman's attorney in that lawsuit had told Freeman he had the right to use that area after the judgment in the prior suit.[2]

On cross-examination, Cherokee's surveyor admitted that references to the monuments and natural boundaries in deeds on which he relied were now out in the lake and that the "Cherokee Bayou" boundary was completely submerged. He testified there were no natural boundaries to refer to because they had been destroyed by the lake's creation.[3] He testified they had found enough artificial monuments to determine the boundaries, but then was asked specifically about several locations and admitted he had not found monuments in those locations. He also testified that, when he had originally done the research used to prepare the plat of the 48–1/2 acres (apparently several years earlier), he had located that acreage only in order to determine where a separate three-acre tract was located. The surveyor ultimately stated he had relied on bearings and distances to find some of the corners.

Freeman testified personally he did not believe the property was inside the bounds of the 48–1/2 acres.

The evidence is not conclusive. The cross-examination of the surveyor cast doubt on the survey based on the weaknesses of prior surveys and the changes in the nature of the land over a period of decades as a result of the creation of Cherokee Lake. Thus, there is some question concerning the actual location of the properties involved—not on the ground—but as shown by the survey. Where the evidence conflicts, we cannot conclude the trial court erred by refusing to render a JNOV in favor of Cherokee. The trial court also did not err by overruling Cherokee's objection to the adverse possession jury instruction based on this contention.

The prior lawsuit orders legal title vested in Cherokee to all the land conveyed pursuant to the 1948 deed from W.F. and Dessie Freeman, including but not limited to Lots SR–51, SR–52, and SR–53. The prior judgment does not specifically determine that Park A Lot is included in the 48–1/2 acres conveyed to Cherokee by the Freemans. Therefore, that issue was not actually litigated in the prior case.

C. Does the Prior Litigation Arise from the Same Subject Matter as this Case

---

2. The 2002 judgment provided that Cherokee had legal title to all land conveyed pursuant to that general warranty deed, including but not limited to Lots SR–51, SR–52, and SR–53.

3. The priority, or dignity of calls, is as follows: (1) natural objects; (2) artificial objects; (3) course; and (4) distance. *Stafford v. King*, 30 Tex. 257 (1867); *Higginbotham v. Davis*, 35 S.W.3d 194, 196 (Tex.App.-Waco 2000, pet. denied). When there are conflicting calls of equal dignity, the call that is most

consistent with the intention of the surveyor as reflected by the entire description will be followed. *Sweats v. Southern Pine Lumber Co.*, 361 S.W.2d 214 (Tex.Civ.App.-Houston 1962, writ ref'd n.r.e.). However, if the deed description, as applied to physical facts, does not fix the location of the property, there is a question of fact to be submitted to the jury. *Compare Higginbotham*, 35 S.W.3d at 197; *Gage v. Owen*, 435 S.W.2d 559 (Tex.Civ.App.-Fort Worth 1968, writ ref'd n.r.e.).

Res judicata precludes relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt,* 919 S.W.2d at 652 (citing *Barr,* 837 S.W.2d at 628).

■ As recognized by this Court, where there is a legal relationship (such as under a lease, a contract, or a marriage), all claims arising from that relationship will arise from the same subject matter and be subject to res judicata. *Musgrave v. Owen,* 67 S.W.3d 513, 520 (Tex.App.-Texarkana 2002, no pet.) (citing *Weiman v. Addicks–Fairbanks Road Sand Co.,* 846 S.W.2d 414, 419 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (core facts common to all claims regarding continued operation of landfill after lease expired; combining claims would be consistent with achieving comprehensive conclusion to business relationship); *see also Twyman v. Twyman,* 855 S.W.2d 619, 625 (Tex.1993) (resolving both tort and divorce actions in same proceeding avoids two trials based at least in part on same facts; settles in one suit "all matters existing between the parties"); *Robinson v. Garcia,* 5 S.W.3d 348, 350–51 (Tex.App.-Corpus Christi 1999, pet. denied) (both claims should have been tried together as they arose from representation in same case, although distinct injuries and improper conduct were alleged); *but see In re J.G.W.,* 54 S.W.3d 826, 833 (Tex.App.-Texarkana 2001, no pet.) (tort claims for personal injury that could have been brought in divorce-custody suit, but were not essentially connected to that action and would only be incidental to the main objective of the court, to determine the best interests of children, not barred by res judicata)).

■ The decisive issue is whether this litigation involves the same subject matter as the litigation between these parties that resulted in the previous judgment. If it was, this action is barred; otherwise, it is not. "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation." *Barr,* 837 S.W.2d at 630.

The record of the argument of counsel presented to the trial court on the motion for summary judgment in cause number 96–138 is before us in this matter. After carefully reviewing it, we find the prior litigation concerned Lots SR–51, SR–52, and SR–53 and did not address Park A Lot, which is the dispute in this case. Specifically, counsel for Cherokee stated the following at the motion for summary judgment hearing in the prior case:

> Cherokee Water Company and the Nelsons would assert that they are entitled to judgment as a matter of law on their trespass to try title claims for SR–51 and SR–52. Cherokee Water Company would assert that it is entitled to judgment as a matter of law on its trespass to try title claim for SR–53. The Nelsons and Cherokee Water would also—well, Cherokee Water would assert that it is entitled to a declaratory judgment, that it has legal title to SR–51, SR–52 and SR–53. The Nelsons would assert or would request a declaratory judgment that they are entitled to peaceful and exclusive possession of SR–51 and SR–52.

The attorneys referred to either SR–51, SR–52, or SR–53 on at least nine additional occasions during the motion hearing and never indicated that Park A Lot was a part of the dispute.

While Park A Lot is an adjoining tract to SR–53, Park A Lot is designated on the plat as a separate parcel of real estate. It is clear that the rights of the parties to Park A Lot were not adjudicated in the prior action. However, that does not end

our inquiry. We must determine if the subject matter of the prior action was the same as that in this case. Both cases do involve the alleged adverse possession by Freeman of lots that Cherokee claims to own. It is also true that the judgment in the prior case confirmed Cherokee's ownership of the 48–1/2 acres conveyed by W.R. and Dessie Freeman in 1948. However, there was no jury finding in this case that the 48–1/2 acres included Park A Lot, and we have held that the evidence does not establish as a matter of law that Park A Lot is a part of the 48–1/2 acres. Consequently, the fact that the prior judgment confirms Cherokee's ownership of the 48–1/2 acres does not adjudicate the ownership of Park A Lot.

 Real estate is considered to be unique. *Home Sav. of Am., F.A. v. Van Cleave Dev. Co.*, 737 S.W.2d 58, 59 (Tex. App.-San Antonio 1987, no writ). The fact that a party makes a claim of adverse possession to one lot does not require the party to assert an adverse possession claim to the adjoining lot or be forever barred. Essentially, Cherokee is arguing that, even though the previous suit sought to establish its ownership of Lots SR–51, SR–52, and SR–53, Freeman was required to pursue his adverse possession claim concerning Park A Lot, a separate lot. We disagree.

We find that Park A Lot is a separate and distinct parcel of real estate from Lots SR–51, SR–52, and SR–53 and as such it does not involve the same subject matter as the previous litigation. Therefore, res judicata does not preclude Freeman from asserting his adverse possession claim to Park A Lot.

**D. Is Freeman Estopped from Presenting this Claim**

 In a connected argument, Cherokee also contends Freeman is estopped as a matter of law from claiming the property by adverse possession because the deed covers the property, and since his predecessor was the grantor of the property under the deed, he is estopped by the deed to raise this claim in the absence of an affirmative repudiation of the title. *See McLaren v. Beard*, 811 S.W.2d 564, 568 (Tex.1991). The difficulty in Cherokee's position lies in the same matter discussed above: the lack of any conclusive evidence or jury finding that the property is contained within the bounds of the land described by the 1948 deed. In the absence of those factors, a vital underpinning for the concept is missing and the estoppel argument fails.[4]

**II. Sufficiency of the Evidence**

Cherokee questions whether the evidence is legally and factually sufficient to support the verdict.

 In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450.[5]

---

4. Further, the jury was asked to decide whether Cherokee had notice of Freeman's adverse possession of the property, and concluded that it did.

5. The same question is before this Court in reviewing whether a jury question was properly given. A court must submit questions, instructions, and definitions that the pleadings and evidence raise. Tex.R. Civ. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). A trial court may refuse to submit a question only if no evidence exists to warrant its submission. *Elbaor*, 845 S.W.2d at 243.

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

In a case involving adverse possession, the elements that must be proven are: 1) actual possession of the disputed property, 2) under a claim of right, and 3) that is adverse or hostile to the claim of the owner and that it was consistently and continuously so for the duration of the statutory period. *Taub v. Houston Pipeline Co.,* 75 S.W.3d 606, 625 (Tex.App.-Texarkana 2002, pet. denied); *Sarandos v. Blanton,* 25 S.W.3d 811, 815 (Tex.App.-Waco 2000, pet. denied). The test of hostility is whether acts performed by the claimant on the land, and the use made of the land, was of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property. *Taub,* 75 S.W.3d at 626; *Templeton v. Dreiss,* 961 S.W.2d 645, 670 (Tex.App.-San Antonio 1998, pet. denied).

The controlling statute reads as follows:

(1) "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 2002). Possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990). One essential element of adverse possession under the ten-year limitation statute is that the claimant's possession, or those in privity with the claimant, must be an actual and visible appropriation of the land for ten or more consecutive years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.026 (Vernon 2002);[6] *Rhodes,* 802 S.W.2d at 645; *Commander v. Winkler,* 67 S.W.3d 265, 269 (Tex.App.-Tyler 2001, pet. denied).

Cherokee, through multiple points of error, argues that there is no evidence Freeman had exclusive use-that he failed to

---

If there is some evidence to support a jury question and the court does not submit it, the court commits reversible error. *Id.* In determining whether a trial court should have submitted a question to the jury, the reviewing court must examine the record for evidence supporting submission and ignore all evidence to the contrary. *Id.* Conflicting evidence presents a fact question for the jury. *Id.*

6. TEX. CIV. PRAC. & REM.CODE ANN. § 16.026 reads as follows:

§ 16.026. Adverse Possession: 10–Year Limitations Period

(a) A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

(b) Without a title instrument, peaceable and adverse possession is limited in this section to 160 acres, including improvements, unless the number of acres actually enclosed exceeds 160. If the number of enclosed acres exceeds 160 acres, peaceable and adverse possession extends to the real property actually enclosed.

(c) Peaceable possession of real property held under a duly registered deed or other memorandum of title that fixes the boundaries of the possessor's claim extends to the boundaries specified in the instrument.

repudiate the rights of Cherokee, or that Freeman's use was continuous over a ten—year period. In overlapping points of error, Cherokee states there is no or insufficient evidence that possession was actual; visible; continuous; notorious; distinct; hostile; and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership.

Cherokee contends there is no or insufficient evidence to show Freeman's possession was hostile. Cherokee takes the position that Freeman's (actually his father, W.R.'s) possession was permissive and that there was (1) no proof adequate to show that Cherokee was placed on notice of the change from permissive to hostile, and (2) ten years could not have passed during the hostile use period under the statute because Albert had the right to use the property (for limited purposes) until W.R. died—which was less than ten years ago.

The evidence shows that, during the relevant time frame, W.R. had the right to access to the lake for fishing purposes and for nothing more. The question thus before the jury was whether, in light of his admitted limited right to access, Freeman had acted in a manner that otherwise adversely possessed the property for all purposes. The limited right does not mean adverse possession could not be proven, but does mean Freeman needed to show possession beyond that allowed.

Freeman testified that his father dug a canal across the property and created an earthen pier in 1957; that his family had maintained Park A Lot on a regular basis, kept it mowed, and cut trees from the time the lake was created; that he had paid taxes on property shown to adjoin the lake; that he had not allowed Cherokee onto the property; and that he had installed a water meter in 1994. He also testified Cherokee had never claimed Park A Lot, even during the other lawsuits. Tra-

cy Freeman, W.R. Freeman's grandson and Albert Freeman's nephew, also testified the family had used the property by clearing it and having picnics and family outings there. He further testified that he had moved a mobile home onto the property and lived there from 1982 until 1990, and that he had installed a septic tank and drilled a water well on the property—ultimately leaving them there. The lake patrol was aware he was living there and had admitted at one point that the property was Freeman's, not Cherokee's. Jason Jones, W.R. Freeman's grandson and Albert Freeman's nephew, testified he had moved a mobile home onto the lot in July 1994 and lived there until August 2000. He mowed weekly during the summers, and Cherokee was actually aware of his use.

Additionally, Freeman introduced a "Garden Plot Lease" (dated 1990) that Cherokee had entered into with an adjoining landowner describing the location of the lease as "west of the Freeman's property in fee," a location that the testimony reflects is the property at bar.

A lake patrolman testified he had worked for Cherokee for seven years before October 2002 and had never interfered with the Freeman family's use of Park A Lot. Jerry Northcutt, the assistant lake manager for Cherokee, testified the Freeman family had used the property as discussed above, identified the "Garden Plot Lease" as having been prepared by Cherokee, and agreed that the family's use of Park A Lot was inconsistent with and contrary to any rights that Cherokee might have.

Freeman quite accurately points out Cherokee never took physical possession of this piece of property until Cherokee brought the present suit.

There is evidence to support the verdict. Under the legal and factual sufficiency standards set out above, the evidence is legally and factually sufficient to support the verdict. The trial court, therefore, did not err by overruling Cherokee's objections to the charge because there was some evidence to raise the issues.

## III. Repudiation

■■■ Cherokee further contends Freeman's original entry onto the property was permissive and Freeman was required to repudiate Cherokee's title to the property before an adverse possession claim could commence. The argument is that Freeman never repudiated Cherokee's title to the land.

In the 1948 conveyance, W.R. and Dessie Freeman retained the right to fish on the lake. This reservation did not specify which lot Freeman could use to access the lake. It is this reservation Cherokee claims gave Freeman permissive use until the death of W.R. Freeman in 1994.

For the same reasons discussed above, we disagree with this argument. We have held that it cannot be determined as a matter of law that the lot in question (Park A Lot) is a part of the 48–1/2 acre tract in which the fishing permission was reserved. It has not been established that this is a tract for which permission was given for fishing on the lake. Without that determination, it was not necessary for Freeman to repudiate Cherokee's title. We do note that a jury question was submitted on this issue and answered in Freeman's favor.

## IV. The Adequacy of the Description in the Judgment

■■■ Finally, Cherokee contends the trial court's judgment is inadequate—as well as void—because it does not adequately describe the tract of land involved, citing *Arnold v. Crockett Indep. Sch. Dist.*, 404 S.W.2d 27, 28 (Tex.1966) (holding that "a judgment for foreclosure of a tax lien upon real estate which, though aided by the judgment roll, fails to describe a definite tract of land is void").

The trial court's judgment describes the property as being shown by the plat identifying the location of Park A Lot, which was also attached to, and made part of, the trial court's judgment. Cherokee argues that this is insufficient: that a written metes and bounds description of the property is necessary to adequately identify the property for purposes of the judgment.

Counsel directs us to no authority directly addressing this point. He correctly states that the cases require the judgment to provide a description of the land that "will enable a person familiar with it to identify it from the description," citing *Pomeroy v. Pearce*, 2 S.W.2d 431, 432 (Tex. Comm'n App.1928, holding approved).

■■■ The party claiming title by virtue of adverse possession has the burden of proving a description of the property adversely possessed. *Coleman v. Waddell*, 151 Tex. 337, 249 S.W.2d 912, 913 (1952); *Julien v. Baker*, 758 S.W.2d 873, 877 (Tex. App.-Houston [14th Dist.] 1988, writ denied). In this case, Cherokee does not complain that the evidence offered at trial was insufficient to prove a description of the property, but only that the judgment does not contain an adequate description, which Cherokee equates to a written metes and bounds description.

■■■ The claimant is required to identify the land to establish its location and to show the extent of its interest in the land claimed. *Perkins v. McGehee*, 133 S.W.3d 287, 291 (Tex.App.-Fort Worth 2004, no pet.); *Julien*, 758 S.W.2d at 877. In other words, the adverse claimant must merely prove the location of the disputed

property on the ground. *Thompson v. Tex. Commerce Bank Nat'l Ass'n,* 586 S.W.2d 138, 141 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). The general test for determining the sufficiency of a description of the land is whether the tract can be identified with reasonable certainty. *Perkins,* 133 S.W.3d at 291; *Julien,* 758 S.W.2d at 877.

At trial, both parties introduced into evidence copies of various deeds for properties adjoining the property at issue, which contain metes and bounds descriptions of the adjoining properties. Cherokee itself offered into evidence a map depicting the entire area, including the property at issue, which shows the roadways and the water line, as well as a complete plat of the development. While the trial court's judgment fails to provide a written metes and bounds description of the property in dispute, the judgment does identify the property specifically as set out in the map—and we further recognize that this litigation was in large part caused by disagreement about the actual location of the property on the ground and whether the written description of the location accurately described that property.

The map and plat attached to the judgment, in combination with the court's specific reference to that map, is sufficient to identify the disputed property with reasonable certainty so that it may be located on the ground. *See Perkins,* 133 S.W.3d at 291.

We affirm the trial court's judgment.