NO. 07-06-0233-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

APRIL 17, 2008

_____

IN RE LUCINDA J. MYERS, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF BARRY A. LONG, DECEASED,
APPELLANT

V.

MEGA LIFE AND HEALTH INSURANCE COMPANY AND DOLLY COLBERT,
APPELLEES

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 90826-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Lucinda J. Myers, individually, and as personal representative of the

estate of her husband, Barry A. Long (Myers), appeals from a judgment rendered in favor

of Appellees, Mega Life and Health Insurance Company and Dolly Colbert (Mega Life), on

their counterclaim seeking to rescind Long's insurance coverage due to misrepresentations in his insurance application. Myers asserts the trial court erred by: (1) failing to include a jury instruction asking whether Mega Life satisfied the statutory notice provision for asserting the defense of misrepresentation; (2) denying admission of Mega Life correspondence related to claim processing; (3) denying admission of a Mega Life document entitled "Explanation of Benefits"; (4) permitting Mega Life to open and close the evidence and arguments at trial; (5) refusing to permit Myers to present evidence on her causes of action during trial of Mega Life's counterclaim; (6) denying Myers's Motion to Modify or Amend Judgment and Motion for a New Trial (Motion for New Trial) because, in the absence of an order severing the actions, Myers offered substantial evidence to prove her causes of action and Mega Life offered no evidence on other defenses and counterclaims; (7) denying Myers's Motion for New Trial because the trial court granted Mega Life's Motion for Judgment and dismissed all Mega Life's defenses and counterclaims; (8) denying Myers's motion seeking waiver of Mega Life's defenses and counterclaims because Mega Life processed a subsequent claim by Myers; (9) failing to include a jury instruction on ratification; and (10) denying Myers's Motions to Correct, Modify, or Amend the Judgment and for a New Trial and Directed Verdict on the issue of ratification. We reverse the judgment of the trial court and remand the cause for further proceedings.

2

## Background

On April 8, 2003, Myers filed suit based upon an insurance contract issued by Mega Life. In addition to a declaratory judgment action related to coverage issues, Myers sought damages for breach of contract, breach of duty of good faith and fair dealing, negligence, exemplary damages, unfair claims settlement practices, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act.[1] Mega Life responded, in part, with a counterclaim seeking rescission of Long's coverage due to material misrepresentations in his insurance application regarding his medical condition in 2001 and 2002. Thereafter, Myers filed an answer to Mega Life's counterclaim placing all matters in the counterclaim in issue by general denial and asserted all affirmative defenses enumerated in Rule 94 of the Texas Rules of Civil Procedure, together with any other defenses raised by the facts of the case.

On February 3, 2006, the trial court issued a letter ruling that Mega Life's counterclaim for rescission would be tried to the jury prior to proceeding with Myers's liability and damages case. If the jury found against Mega Life on its counterclaim, Myers's case would proceed. On February 13, Mega Life filed its Trial Brief on Rescission–Timeliness acknowledging its burden of proving the timeliness of its notice of rescission to Myers.

---

[1]Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (Vernon 2002 & Supp. 2007).

Prior to trial, Myers moved in limine to prohibit Mega Life from putting on any evidence related to its rescission counterclaim. Myers asserted Mega Life had failed as a matter of law in meeting the notice requirements for asserting the defense under the Texas Insurance Code which states, in pertinent part:

> (b) A defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy only if the defendant shows at trial that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant refused to be bound by the policy . . . (2) to the owners or beneficiaries of the insurance policy, if the insured was deceased.

Tex. Ins. Code Ann. § 705.005 (Vernon Pamph. 2007).

In support, Myers asserted that, during her deposition on October 14, 2003, as well as in documents produced to Mega Life's attorney on November 10, 2003, she supplied sufficient information to put Mega Life on notice that the representations in Long's application were false and Mega Life subsequently failed to give notice of rescission of Long's insurance coverage within the statutory mandated time period, 91 days.[2] Following a hotly contested hearing, the trial judge overruled Myers's motion in limine, and proceeded to try Mega Life's counterclaim.

---

[2] If Mega Life received sufficient information on October 14, 2003, to discover the falsity of Long's representations in the application, notice of rescission would have been due on or before January 13, 2004, to meet statutory requirements. Mega Life asserts timely notice of rescission was given on March 19, 2004, when Mega Life filed its First Amended Original Answer and asserted rescission due to material misrepresentations as an affirmative defense. The misrepresentations relied upon by Mega Life were later asserted as a part of a counterclaim.

At the conclusion of trial, Myers submitted the following jury instruction:

Do you find from a preponderance of the evidence that Mega Life and Health Insurance Company gave notice to Barry A. Long or to the owners or beneficiaries of the insurance policy in question that they refused to be bound by the insurance policy in question before the 91st day that Mega Life and Health Insurance Company discovered the falsity of a representation, if any?

You are instructed that the term "preponderance of evidence" means the greater weight and degree of credible evidence admitted in this case. Authorities: Tex. Ins. Code § 705.005*; Womack v. Allstate Ins. Co.,* 296 S.W.2d 233, 235-36 (Tex. 1956)

The trial court denied the instruction. Thereafter, the jury returned a verdict in favor of Mega Life on its misrepresentation defense.

**Discussion**

We first consider Myers's assertion that the trial court erred by refusing to charge the jury with a question on the timeliness of Mega Life's notice of rescission. Whether the trial court erred in refusing to submit a particular issue to the jury depends upon whether it abused its discretion. *McWilliams v. Masterson,* 112 S.W.3d 314, 317 (Tex.App.–Amarillo 2003, pet. denied). "Discretion is abused when the court acts arbitrarily, unreasonably or without reference to guiding principles of law." *Id.* Moreover, "conduct founded upon misinterpreted or misapplied law falls within the borders of abused discretion." *Crawford v. Hope,* 898 S.W.2d 937, 940 (Tex.App.–Amarillo 1995, writ denied).

5

Rule 278 of the Texas Rules of Civil Procedure provides, in pertinent part, that:

> The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence.

This rule provides a substantive, non-discretionary directive to trial courts requiring them to submit questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith,* 845 S.W.2d 240, 244 (Tex. 1992); *Turbines, Inc. v. Dardis,* 1 S.W.3d 726, 734 (Tex.App.–Amarillo 1999, pet. denied). If a controlling issue is timely raised by pleadings and evidence and properly requested to be included in the charge, refusal to submit the issue may constitute reversible error. *In re T.J.S.,* 71 S.W.3d 452, 457 (Tex.App.–Waco 2002, pet. denied) (a controlling issue is one that requires a factual determination to render judgment in the case). Unless there is no evidence to support a jury question, the court commits reversible error if instruction on the question is denied. *Elbaor*, 845 S.W.2d at 243*; Cherokee Water Co. v. Freeman,* 145 S.W.3d 809, 816 (Tex.App.–Texarkana 2004, pet. denied); *Barnett v. Coppell North Texas Court, Ltd.,* 123 S.W.3d 804, 824-25 (Tex.App.–Dallas 2003, pet. denied). In assessing whether any such evidence exists, we must examine the entire record for evidence supporting its submission and ignore all contrary evidence while construing the record in a light most favorable to submitting the instruction. *McWilliams,* 112 S.W.3d at 317.

The timeliness of Mega Life's notice of rescission was raised when Mega Life filed its counterclaim asserting a misrepresentation defense. Statutory notice is an essential

element of a defense based on misrepresentation or rescission. *Womack v. Allstate Ins. Co.,* 156 Tex. 467, 296 S.W.2d 233, 235-36 (1956); *Koral Industries, Inc. v. Security-Connecticut Life Insurance Company,* 788 S.W.2d 136, 148 (Tex.App.–Dallas), *aff'd*, 802 S.W.2d 650 (Tex. 1990). As such, Mega Life had the burden of pleading and proving each element of its affirmative defense, including notice of rescission. *Sanders v. Jefferson National Life Ins. Co.,* 510 S.W.2d 407, 408 (Tex.App.–Dallas 1974, no writ).

At trial, there was sufficient evidence warranting the submission of a jury instruction on the timeliness of Mega Life's notice of rescission. Myers testified she was deposed on October 14, 2003, by Mega Life's attorney in the presence of Jacquelyn Brabham, Mega Life's designated corporate representative for Long's claims. At the deposition, Myers testified Long had been kicked by a horse, suffered from coughs and colds, and had kidney stones prior to the submission of his health insurance application. She also testified that, prior to submitting the application, Long was taking Skelaxin for pain. Long's application did not disclose these prior medical conditions, and Mega Life did not dispute Myers's testimony. Myers also testified she attended Brabham's deposition on the same day and recalled that Brabham was aware Long's application was inaccurate.

Doug Kornegay, Mega Life's Vice President of Underwriting and New Business, opined that, had this information been disclosed on Long's application, Mega Life would not have issued coverage. He testified that, had Long's application disclosed the horse kick, kidney stones, bronchitis, and Skelaxin medication, underwriters would have ordered

7

Long's medical records and placed phone calls to obtain complete details. Tony Shrader, Mega Life's testifying legal expert, opined that all of Long's undisclosed prior medical conditions were material from an underwriting perspective.

Thus, there is evidence of record indicating Myers disclosed sufficient information in her deposition on October 14, 2003, for Mega Life to have discovered the falsity of the representations in Long's application. Therefore, in order to meet the statutory requirements, notice of rescission was due from Mega Life on or before January 13, 2004. On the other hand, Sharon Dickson, Mega Life's Vice President of Claims in 2004, testified she did not learn of Long's pre-application medical history until after March 10, 2004. Dickson testified that notice of Mega Life's intention to rescind Long's coverage was timely issued to Myers through its first amended petition filed March 19, 2004. Clearly, there was at the least a fact issue raised by the pleadings and the evidence warranting an instruction to the jury on the issue of the timeliness of Mega Life's notice of rescission.

Thus, the failure of the trial court to charge the jury on this issue constituted reversible error. *See Cherokee Water,* 145 S.W.3d at 816 n.5; *Holmes v. Concord Homes, Ltd.,* 115 S.W.3d 310, 314 (Tex.App.–Texarkana 2003, no pet.); *Cash America International Inc. v. Hampton Place, Inc.,* 955 S.W.2d 459, 462 (Tex.App.–Fort Worth 1997, pet. denied). Moreover, where, as here, the issue was hotly contested and the evidence sharply conflicting, the failure to issue the instruction probably caused the

rendition of an improper judgment. *See Quantum Chemical Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex. 2001).

Mega Life contends an instruction was unnecessary because the timeliness of its notice was never factually disputed.[3] However, when Myers filed her answer and general denial, Mega Life was on notice that the factual basis for its defense was at issue. When Myers sought to exclude Mega Life's evidence in support of the defense through a motion in limine prior to trial, Mega Life was on notice that the factual basis of its defense was, in fact, disputed. When Myers put evidence on at trial regarding Mega Life's knowledge of Long's pre-application medical condition in October 2003, Myers raised a fact issue requiring an instruction.

In fact, had Myers not requested the instruction, Mega Life's failure to do so would have constituted a waiver of the defense. *See Paramount Nat. Life Ins. v. Williams,* 772 S.W.2d 255, 265 (Tex.App.–Houston [14th Dist.] 1989, writ denied). *See also Rao v. Rodriguez,* 923 S.W.2d 176, 180 (Tex.App.–Beaumont 1996, no writ). Where a party bears the burden of proof on an affirmative defense such as misrepresentation, that party is responsible to see that all essential elements of his or her cause of action are submitted

---

[3]*Koral Industries* is of no assistance to Mega Life. In *Koral Industries,* the court "combed the record" for any indication of a disputed factual issue, but found none. 788 S.W.2d at 149. Neither had appellant given the court "any citation to the record pointing out any conflict regarding the statutory notice." *Id.* Both are present here.

to the jury or the ground of recovery is waived. *See Schwiff v. Priest,* 650 S.W.2d 894, 901 (Tex.App.–San Antonio 1983, writ ref'd n.r.e.).

Contrary to Mega Life's assertion, Myers was not required to raise the issue of untimely notice through a pleading in order for a fact issue to exist. By virtue of her answer and general denial, Myers was entitled to introduce evidence to disprove the timeliness of Mega Life's notice and to rebut evidence offered by Mega Life. *See Moulton v. Alamo Ambulance Service, Inc.,* 414 S.W.2d 444, 448 (Tex. 1967). *See also* 71 Tex.Jur. 3d *Trial and ADR* § 268 (2002). Myers's answer merely sought to defend against Mega Life's counterclaim by denying the misrepresentation defense, not by seeking to establish an independent reason why Mega Life's counterclaim should fail. *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 212 (Tex. 1996). As such, Myers's general denial was sufficient to put the timeliness of Mega Life's notice at issue. Tex. R. Civ. P. 92; *Shell Chem. Co. v. Lamb,* 493 S.W.2d 742, 744 (Tex. 1973).

Mega Life's contention that its evidence proved proper notice of rescission as a matter of law is equally unavailing. In support, Mega Life contends the 91 day period under § 705.005 of the Texas Insurance Code does not begin to run until the insurer discovers the falsity of the representation *and determines the misrepresentations are material.* The statute contains no such pre-condition to the running of the 91 day period and we will not create one. Moreover, Mega Life's reliance on *Koral Industries* is misplaced. Consistent with our finding here, the *Koral* court stated "[i]n order to establish that the statutory notice

10

was given within a reasonable time, the record must show when the insurer discovered the misrepresentations. [citations omitted]." 788 S.W.2d at 148. When the *Koral* court later stated "[t]he issue concerns when [the insurer] discovered those misrepresentations that were material to the risk and allegedly relied upon by [the insurer];" the court was merely underscoring the point that the 91 day period does not begin to run on the discovery of *any* misrepresentation, but upon discovery of those representations that are material to a coverage determination. *Id.* at 149-50. Issue one is sustained.

## Conclusion

Our disposition of Meyers's first issue pretermits consideration of her remaining issues. Tex. R. App. P. 47.1. Accordingly, the trial court's judgment is reversed and the cause is remanded for further proceedings.

Patrick A. Pirtle<br>
Justice

11