In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00119-CV


______________________________




ALBERT O. FREEMAN, Appellant



V.



CHEROKEE WATER COMPANY, Appellee




 


On Appeal from the Fourth Judicial District Court


Rusk County, Texas


Trial Court No. 2007-418




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Albert O. Freeman is again before this Court, in reference to a 1.3-acre tract of land near Lake
Cherokee. The bounds of that property were finally determined in an opinion by this Court in which
we affirmed a jury finding that Freeman had adversely possessed the property. As a part of that
judgment, the boundary of the property and its ownership were specifically determined and locations
specified in detail. The result is that Freeman has ownership of a piece of property surrounded on
three sides by Cherokee Water Company property, and the fourth (north) side--the side facing the
lake--is the boundary that is the subject of the current controversy. 

I. The Continuing Controversy 

 The property at bar is immediately southeast of Lake Cherokee, and within very close
proximity to the lake. Cherokee Water Company placed a fence on the boundary line between
Freeman's property and the lake; Freeman takes umbrage at its existence and admittedly removed
it on two occasions. Cherokee sought damages for trespass and conversion, as well as an injunction
(ordering Freeman not to take down the fence again), and later added a claim seeking declaratory
relief. The court entered a summary judgment in favor of Cherokee on liability, and the parties filed
stipulations resolving the remaining issues regarding damages and attorney's fees. 

II. Is the Fence Properly Located? 

 In three points of error that overlap and essentially merge, Freeman argues that the trial court
erred in rendering judgment. He contends (1) that there is a fact issue about whether the fence was
placed on the actual boundary between that owned by Lake Cherokee and that owned by Freeman
and (2) that there is conflicting evidence about the proper location to place the fence. The only real
issue raised by Freeman involves the placement of the fence. Freeman argues that there are fact
issues to be decided and that summary judgment was improper. 

 The property is the "Park A Lot," which is effectively surrounded by property owned by
Cherokee. Cherokee hired a surveyor to mark the boundary between Park A Lot and Lot SQ-1. 
Freeman argues that the boundary is about ninety feet north of the location marked by the surveyor. 
 The trial court independently appointed a surveyor to determine whether the fence along the
northern boundary conforms with the judgment of the trial court (as affirmed by this Court). The
surveyor, Dwayne Miley, testified that the fence was not located on Park A Lot (and thus was not
impinging on Freeman's property)--with one exception. He testified that the fence was 5-3/4 inches
south of the north boundary line (and thus on Freeman's property) at one survey shot. However, he
went on to testify that all of the remaining survey shots showed that the remainder of the fence was
actually north of the boundary line, and therefore was not on Freeman's property. Cherokee amended
its motion for summary judgment to include those findings as summary judgment evidence.

 In his response to the motion for summary judgment, Freeman attached summary judgment
proof consisting of plats, pleadings from the previous litigation (and affidavits originally filed in that
litigation), a copy of our opinion in cause number 06-03-00168-CV, and an affidavit from Johnny
Freeman. Johnny Freeman's affidavit sets out the basis of Freeman's claim: that his father, in 1957,
built an earth pier into the lake, with a canal alongside it, presumably to haul boats on and to fish
from, and that the newly constructed fence bisects that pier. Freeman argues this evidence is proof
that he owned the property, including the pier, and that the fence was thus unlawfully placed.

 This argument misses the point. The location of the boundary lines was specified in the 2002
judgment of the trial court, which was affirmed by this Court. This is a final judgment. The location
of the property line has been judicially determined. The discussion in our previous opinion regarding
the earthen dam was a recitation of some of the evidence of Freeman's adverse possession of the lot,
not a portion of the lot's description. Assuming that the correct location line can be determined from
that prior judgment, the only question is whether the location as judicially determined was properly
translated to an actual location on the ground. Cherokee Water Co. v. Freeman, 145 S.W.3d 809
(Tex. App.--Texarkana 2004, pet. denied). 

 This issue is aligned with the discussion of the description of the property in our previous
opinion. We acknowledged that the litigation was largely caused by disagreement about the actual
location of the property on the ground and whether the written description of the location accurately
described the property. Id. at 820. We concluded that the map and plat attached to the trial court's
judgment was adequate to show the physical location of the property and affirmed the trial court's
judgment which placed the boundaries at the locations shown by those instruments. 

 In one aspect of his argument in this appeal, Freeman now stands in the position of arguing
that the boundaries shown by those instruments are not correct. He refers in his response to the
motion for summary judgment to the expert opinions of Gary Bailey, K. C. Lust, and Perry
Thompson as to the location of the northwest corner of Park Lot A, which he states is ninety feet
deep in the lake. Our record contains such an affidaivt only from Lust.

 A copy of Lust's affidavit is attached to the response. It is dated July 23, 2001, and was
evidently part of the evidence at the prior trial. (1) From our reading of the brief, Freeman does not
argue that the survey line establishing the fence inaccurately traces the description in the previous
judgment, but argues that the boundary should be established from surveys done before the boundary
line was finally resolved in the judgment. The summary judgment evidence shows, through the
affidavits of the two surveyors involved, that the fence was built correctly on the boundary line as
set out by the prior judgment of the district court--and affirmed by this Court. 

III. Res Judicata 

 Cherokee, among other things, contends that the judgment in its favor was correct because
res judicata requires such. It argues that under our prior opinion, as a matter of law, the location of
the property has been finally determined, and res judicata requires such. 

 An appellate court reviews de novo the trial court's summary judgment. Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). A defendant is entitled to summary
judgment on an affirmative defense if it conclusively proves each element of the defense asserted. 
Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996); Joachim v. Travelers Ins. Co., 279
S.W.3d 812, 815 (Tex. App.--Amarillo 2008, pet. filed). When the material facts are undisputed,
the nonmovant may defeat a motion for summary judgment by establishing that the movant's legal
position is unsound. Hanssen v. Our Redeemer Lutheran Church, 938 S.W.2d 85, 90 (Tex.
App.--Dallas 1996, writ denied).

 Res judicata is an affirmative defense treated as a plea in bar which reaches the merits of the
case. Tex. R. Civ. P. 94 (citing Tex. Hwy. Dep't v. Jarrell, 418 S.W.2d 486, 488 (Tex. 1967)). 

 Res judicata, also known as claim preclusion, prevents the relitigation of a finally-adjudicated
claim and related matters that should have been litigated in a prior suit. Barr v. Resolution Trust
Corp., 837 S.W.2d 627, 628 (Tex. 1992); Pyles v. Young, No. 06-07-00066-CV, 2007 WL 4462738
(Tex. App.--Texarkana Dec. 21, 2007, no pet.) (mem. op.). Texas follows the transactional
approach to res judicata. Barr, 837 S.W.2d at 630. This approach mandates that a defendant bring
as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of
the opposing party's suit. State & County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex.
2001); Barr, 837 S.W.2d at 630. It requires proof of three elements: (1) a prior final judgment on
the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them;
and (3) a second action based on the same claims as were raised or could have been raised in the first
action. Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996).

 In this case, there is no doubt that all three elements are present. The summary judgment
proof contains copies of the plats and maps that were part of the underlying judgment, which we
affirmed. Those documents show on their face the location of the north boundary of the property. 
The summary judgment proof from the two surveyors involved in this instance was that the fence
was on that boundary line. (2) The claim concerning the proper location of the boundary lines either
was or could have been raised in the preceding lawsuit.

 The same parties are involved. The courts involved clearly had jurisdiction over the matters
raised therein, and the judgment of this Court in the preceding case is final. 

 Under these circumstances, we conclude that the concept of res judicata terminates the
question of the location of the boundary and that in the absence of allegation or evidence that the
fence as built was not on that previously judicially determined boundary line, the trial court properly
rendered summary judgment in favor of Cherokee.







 We affirm the judgment.


 Jack Carter

 Justice


Date Submitted: May 18, 2009 

Date Decided: June 5, 2009

1. Even if Lust's affidavit were relevant at this juncture, it is so rife with qualifying language
that it simply does not specify a correct location, it specifies where a location may be found based
on information given by Freeman.
2. There is neither summary judgment evidence that it was not on that boundary line, nor is
there any argument to that effect. The argument is that the boundary was elsewhere.


 233 S.W.3d 349, 252 (Tex. Crim. App. 2007). 

 As part of its predicate for admitting State's Exhibit 5, the State and Ellison had the following
exchange in the jury's presence:

[The State]: I want to discuss with you for a minute, you've got your
probation file up there Ms. Ellison, I'm going to approach you with what I've marked
as State's Exhibit 5. Specifically, this is another multi-page exhibit. Is there a stamp
on each page of this -- of this exhibit?


A: Yes, there is. And a raised seal on the last page.


Q: And what does that seem to indicate to you?


A: It's a certified copy from the District Clerk of Marion County.


Q: Is there a cause number listed specifically in this packet of papers?


A: Yes, it is, 4222 in the 115th District Court, Marion County.


Q: What would the style of the case reflect?


A: That it was Raymond Reese.


Q: Again, in which county?


A: In Marion County, March the 9th, 1998.


[The State]: Your Honor, at this time, I'd move to offer State's Exhibit 5,
which is a certified copy of the Marion County DWI -- or prior intoxication offense.


[Defense Counsel]: No objection, Your Honor.


THE COURT: State's Exhibit 5 is admitted without objection.


(Emphasis added.) 

 Our Rules of Evidence provide, 

 Extrinsic evidence of authenticity as a condition precedent to admissibility is not
required with respect to the following: (1) A document bearing a seal purporting to
be that of the United States, or of any State, district, Commonwealth, territory, or
insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the
Pacific Islands, or of a political subdivision, department, officer, or any agency
thereof, and a signature purporting to be an attestation or execution.

 Tex. R. Evid. 902.

 Ellison's testimony, that State's Exhibit 5 bore a seal purporting to be that of the Marion
County District Clerk, would have satisfied the requirements of Rule 902. As a self-authenticating
document under Rule 902, the trial court would have overruled any challenge to Exhibit 5's
admission. Moreover, as correctly noted by the State in its appellate brief, judgments of previous
convictions that have become final are not excluded in criminal cases by the hearsay rule. See Tex.
R. Evid. 803(22). As evidence of a finalized judgment of conviction, Reese's trial counsel could not
have brought forth a sustainable objection based on hearsay. Accordingly, the record before us will
not support Reese's claim of ineffective assistance.

 For the reasons stated, we overrule each of Reese's points of error and affirm the trial court's
judgment.



 Jack Carter

 Justice


Date Submitted: November 5, 2008

Date Decided: November 7, 2008


Publish
1. The definitions contained in Section 49.01 of the Texas Penal Code set forth alternate means
by which the State may prove intoxication, rather than alternate means of committing the offense.
See Tex. Penal Code Ann. § 49.01 (Vernon 2003). The conduct proscribed by the Texas Penal
Code is the act of driving while in a state of intoxication. That does not change whether the State
uses the per se definition or the impairment definition to prove the offense. Bagheri v. State, 119
S.W.3d 755, 762 (Tex. Crim. App. 2003); State v. Barbernell, 257 S.W.3d 248, 256 (Tex. Crim.
App. 2008). Further, the substance that causes intoxication is not an element of the offense. It is
not the forbidden conduct, the required culpability, any required result, or the negation of any
exception to the offense. Instead, it is an evidentiary matter. Gray v. State, 152 S.W.3d 125, 132
(Tex. Crim. App. 2004).
2. The hypothetically correct jury charge must contain the additional element that the offense
occurred on or about the date alleged in the charging instrument. See, e.g., Gagliardo v. State, 78
S.W.3d 469, 475 (Tex. App.--Tyler 2001, pet. ref'd) (including date alleged in indictment as element
needing proof under hypothetically correct jury charge construct).
3. Reese does not challenge the State's proof with respect to any of the remaining elements of
the charge now on appeal.