

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00043-CV

_____

IN RE THE COMMITMENT OF DANIEL ALLEN METCALF

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 17C1549-005

Before Morriss, C.J., Stevens and Carter,* JJ.
Opinion by Justice Stevens

_____

**Jack Carter, Justice, Retired, Sitting by Assignment

O P I N I O N

Based on the verdict of a Bowie County jury, Daniel Allen Metcalf was civilly committed as a sexually violent predator (SVP) for treatment and supervision as coordinated by the Texas Civil Commitment Office.[1] On appeal, Metcalf challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence and complains that the State's experts based their opinions on an incorrect definition of "behavioral abnormality."[2] Because we find that (1) legally and factually sufficient evidence supported the jury's finding and (2) Metcalf's other complaint is without merit, we affirm the trial court's judgment.

I.      Sufficient Evidence Supported the Jury's Finding

A.      Applicable Law

Chapter 841 of the Texas Health and Safety Code provides the procedures governing the civil commitment of a SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.082. (Supp.). To support a civil commitment order, a judge or a jury must determine that the person is a "sexually violent predator," TEX. HEALTH & SAFETY CODE ANN. § 841.062(a), which requires a finding beyond a reasonable doubt that the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence," TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). *See* TEX. HEALTH & SAFETY CODE ANN. § 841.081(a). As applicable to this case, "[a] person is a repeat sexually

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.003, 841.007, 841.081.

[2]*See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(2).

2

violent offender . . . if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses."[3]  TEX. HEALTH & SAFETY CODE ANN. § 841.003(b).

A "behavioral abnormality" is a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2).  The Texas Supreme Court has explained,

> Boiling it down, a behavioral abnormality is "a . . . condition that . . . predisposes" sexually violent conduct.  The modifier, "predisposes[,"] qualifies and describes "condition[."]  The required condition *is* the predisposition.  The condition has no other qualities, other than that it can be congenital or acquired.  The condition and predisposition are one and the same.

*In re Commitment of Bohannan*, 388 S.W.3d 296, 302–03 (Tex. 2012).

Further, when considering the different language of "*likely to engage in a predatory act of sexual violence*" and "predisposes the person to commit a sexually violent offense," the court reasoned that "the import of predisposition and likelihood is exactly the same:  increased risk.  An increased likelihood of misconduct indicates a predisposition, and a predisposition threatens increased likelihood."  *Id*. at 303.  Consequently, the court concluded that "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue."  *Id.* (quoting TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)).

---

[3]The trial court entered a partial directed verdict that found Metcalf was a repeat sexually violent offender, which was not challenged on appeal.

3

The United States Supreme Court has held "that there must be proof of serious difficulty in controlling behavior" to civilly commit a sexually violent predator. *Kansas v. Crane*, 534 U.S. 407, 413 (2002). The Court also recognized that an "'inability to control behavior' will not be demonstrable with mathematical precision." *Id.* Rather, proof of serious difficulty in controlling behavior,

> when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Id*. (citing *Kansas v. Hendricks*, 521 U.S. 346, 357–58 (1997). "Serious difficulty controlling behavior can be inferred from an individual's past behavior, his own testimony, and the experts' testimony." *In re Commitment of Washington*, No. 09-11-00658-CV, 2013 WL 2732569, at *6 (Tex. App.—Beaumont June 13, 2013, pet. denied) (mem. op.) (citing *In re Commitment of Mosqueda*, No. 09-10-00540-CV, 2011 WL 5988361, at *1 (Tex. App.—Beaumont Dec.1, 2011, no pet.) (mem. op.)).

### B.     The Evidence at Trial

Darrel Turner, a clinical psychologist, testified that he had performed approximately 220 behavioral abnormality evaluations since 2013. In this case, he interviewed Metcalf for two and one-half hours in September 2017. He also reviewed the records related to Metcalf's offenses, including investigative documents, court and probation documents, victim statements, prison documents, and depositions taken in the case. Turner testified that those are the types of records that are relied upon by experts in his field for this type of evaluation. He explained that it is

4

important for experts to look at the historical records because they are considering the definition of behavioral abnormality and whether there is some condition that affects a person's ability to control their behavior so that they are probably going to commit more sexual offenses. In Metcalf's case, his history showed that he continued to commit sexual offenses even after being caught and punished. According to Turner, this made it clear that there is a condition that makes it difficult for Metcalf to control his behavior and predisposes him and increases his risk to engage in sexually violent acts.

Turner explained that, based on research, the top two risk factors that are most predictive of sexual reoffending are antisocial orientation and sexually deviant interests. When those two factors exist together, the risk is especially high. He explained that antisocial orientation is evidenced by anti-sociality, criminal thinking and behavior, lack of empathy, and feelings of entitlement. Turner diagnosed Metcalf with adult antisocial behavior, but not antisocial personality disorder. He explained that anti-sociality is significant because the more antisocial a person is, the more willing they are to act on sexual urges and to hurt and victimize others to satisfy those urges. Evidence of Metcalf's anti-sociality included his numerous criminal offenses, reoffending after punishment, impulsive and irresponsible behavior, pathological lying, and manipulation.

Turner also testified that sexual deviance in this context means any kind of sexual interest that would require victimizing someone else in order to satisfy that interest. He opined that Metcalf is sexually deviant in that he suffers from pedophilic disorder. He explained that pedophilic disorder is a sexual attraction by an adult to a prepubescent child that lasts for at least six months

5

and that has caused problems for the individual. He further testified that this type of sexual deviance does not go away; rather, it is a chronic, lifelong, defining characteristic.

In addition, Turner testified that Metcalf committed seven sexually violent offenses in a variety of ways over a period of thirteen or fourteen years and that he had a pattern of offending, getting caught and punished, then offending again. The first offense occurred in 1994 when Metcalf committed indecency with a child by fondling her genitals in a restaurant while she was sitting on his lap. At the time, Metcalf was seventeen and the victim was the five-year-old daughter of his employer. Metcalf completed a pretrial diversion program, and the charge for this offense was dismissed in February 1996. Metcalf has maintained his innocence of this charge and has claimed that his employer wanted to fire him and owed the owner of the restaurant money, so his employer got the owner to accuse him of molestation for revenge. Metcalf could not explain how that made sense. Turner testified that that offense set a pattern that continued on in his other offenses. He opined that factors increasing his risk of reoffending included the age of the victim and the offense taking place in a public place, which indicated that there was already a condition that prevented Metcalf from controlling his behavior.

Six months after the dismissal of charges relating to the first offense, Metcalf was indicted for indecent exposure involving an adult female friend of his wife's. Although that was not a sexually violent offense, Turner testified that it was significant in his evaluation because it involved a new type of victim and a non-contact offense. He explained that sex offenders who commit both contact and non-contact offenses are more likely to commit additional sex offenses. In addition, Metcalf indicated to Turner that the victim had an intellectual disability, which

6

indicated that he was targeting vulnerable victims. Even though Metcalf admitted committing the offense, he claimed that the victim only reported it because he previously had a relationship with her and was no longer pursuing her. Turner opined that this offense was significant to Metcalf's risk of reoffending because it occurred shortly after his first offense, he persisted in committing sexual offenses after being punished, his victim pool was increased, and it was a non-contact offense. He explained that the persistence after punishment further shows that Metcalf has difficulty in controlling his sexual behavior.

Metcalf pled guilty to the indecent exposure offense and was placed on probation, which he did not complete. Turner found that significant because it showed an inability to follow rules, and the violation of the conditions of probation showed an elevation of Metcalf's anti-sociality, criminal thinking and behavior. In addition, Metcalf failed to complete the sexual offender treatment that was a condition of probation. Turner opined that all those factors increased Metcalf's risk of committing another sexual offense because it showed his inability to control his behavior due to his sexual deviancy and antisocial personality.

Metcalf's third offense occurred in 2001 when he was accused of indecency with his girlfriend's five-year-old daughter. Turner reviewed recordings related to the case in which the child described Metcalf touching her genitals and bottom. Metcalf claimed that this accusation was motivated by revenge because he discontinued his relationship with the child's mother. He pled guilty to a reduced charge of assault causing bodily injury and was placed on probation for one year, which he completed. Turner testified that both the 1994 and 2001 offenses were against five-year-old girls and used the same method, which created a pattern of sexually deviant interest

7

in prepubescent children lasting several years and provided a good basis for the pedophilic disorder diagnosis.

Metcalf's next five offenses arose in 2007 and involved a thirteen-year-old male who had a heart condition. That victim lived with his grandparents and was Metcalf and his wife's friend. On three dates in August and September 2007, Metcalf encouraged his wife to get into a shower with the victim, to fondle and perform oral sex on the victim, to have sexual intercourse with the victim at the grandparents' house, and to perform oral sex on the victim in the backseat of their truck, all while Metcalf watched.[4] In his interview with Turner, Metcalf denied the truck incident and watching the other interactions and claimed that all of that was his wife's idea and that she initiated the assaults. Turner testified that when the incidents became known, Metcalf sought to portray himself as the protector of the victim at the time, claiming that the boy came to him two years later and that it was Metcalf who got him to go and tell authorities. Metcalf took the victim to the Children's Advocacy Center where the victim maintained that Metcalf had no knowledge of the incidents. However, when he was subsequently interviewed, the victim revealed the extent of Metcalf's involvement and explained that he was afraid to implicate Metcalf in his first statement because Metcalf had brought him to the interview.

Turner testified that the 2007 offenses contained factors that supported his opinion that Metcalf had an increased risk of reoffending because of his sexual deviancy and anti-sociality. These factors included: another young, vulnerable victim; Metcalf's manipulation of the victim

___

[4]Metcalf pled guilty to, and was convicted of, four counts of aggravated sexual assault and one count of indecency with a child by sexual contact for his involvement in these offenses. He received ten-year sentences, to run concurrently, on each count. Metcalf was serving those sentences at the time of trial in this case.

to try to avoid detection; Metcalf's grooming of the victim by supplying him candy, alcohol, and pornography; the expansion of his victim pool to post-pubescent males; tolerance or acceptance of sexual abuse by his wife; and continuing to reoffend after being caught and punished.

Turner also testified as to factors that may reduce Metcalf's risk of reoffending. He pointed out that during his almost ten years in prison, he had only seven disciplinary infractions and that Metcalf had recently enrolled in a nine-month sexual offender treatment program. Metcalf also had realistic post-release plans and a support system in place. Turner also acknowledged that Metcalf had done well in prison and had received certificates for completing the first half of sexual offender treatment, sexual idolatry, fighting sexual temptation, vocational training, faith-based programs, being a peace maker, horticulture, and nursery and landscaping. Turner noted that Metcalf had taken shared responsibility for offenses against the thirteen-year-old victim. Yet, the sexual offender treatment notes did not mention that he had taken any responsibility for his other victims, even though he was in the second stage of treatment. Turner also noted that in his deposition, Metcalf still did not take responsibility for his offenses, still maintained that he was the hero, and claimed that the accusations against him arose out of revenge. Turner opined that Metcalf did not appreciate the gravity of his offenses or their impact on his victims and that Metcalf needed more treatment to prevent more sexual offending.

Turner further testified that he gave Metcalf a score of nineteen on the PCL-R,[5] which is used to measure the degree to which a person has psychopathic characteristics. He explained that a score of nineteen did not indicate that Metcalf was a psychopath, but it did indicate an elevation

---

[5]Psychopathy Checklist, Revised.

9

in anti-sociality. He also gave Metcalf a score of five on the Static-99R, which is a tool to measure the risk of a sexual offender getting caught for another sexual offense after release from prison. Turner explained that a five indicated an above-average risk and that Metcalf was two-and-one-half times as likely to be caught for another sexual offense than the average sexual offender. Turner also opined that the Static-99R underestimated Metcalf's risk of reoffending because it did not take into account that sexual offenses against children are grossly underreported, sexual deviance, anti-sociality, or other specific factors such as the history of reoffending after punishment, ages of victims, and diversity of the victim pool.

Considering Metcalf's sexual deviancy, his antisocial behavior, and his history of sexual offenses, Turner opined that Metcalf's risk of reoffending was quite high. In his opinion, Metcalf suffers from a behavioral abnormality that affects his emotional or volitional capacity. This behavioral abnormality also predisposes him and makes him likely to engage in sexually violent offenses so that he is a menace to the health and safety of others.

Stanley David Self, a psychiatrist, also reviewed the records in the case and interviewed Metcalf for over two hours in February 2018. Self concurred that Metcalf suffered from a behavioral abnormality that made him likely to engage in predatory acts. Self cited many of the same specific facts and risk factors as Turner in support of his opinion. He also agreed that the two assaults on the five-year-old victims supported a pedophilic disorder diagnosis, which he explained requires sexual fantasies or desires of a person sixteen years old or older for prepubescent children that last six months or longer and that cause the person distress or result in the person acting upon the fantasies or desires. He generally agreed with Turner's PCL-R and

10

Static-99R scores. Self also diagnosed Metcalf with adult antisocial behavior based on his prior offenses, manipulation, lying, cheating in his relationships, treading on the rights of others, and having sex with children.

Metcalf, who was forty-one years old at the time of trial, testified that his first offense was against the five-year-old daughter of his boss. He testified that he had not met her before that day. He denied that he touched her genital area, and he maintained that he was falsely accused. Metcalf admitted that six months after he completed a pretrial diversion program, he exposed himself to a woman who was staying with his wife and him. He claimed that he did so at the direction of his wife, who wanted a threesome. He agreed that that was an instance of him not having control over his sexual behavior.

Metcalf testified that he was indicted in 2002 for indecency by contact for touching the vagina and anus of his girlfriend's five-year-old daughter. He again denied committing that crime and testified that his girlfriend falsely accused him because he had kicked her out. When the charges were reduced to assault causing bodily injury, he pled guilty, although he avoided stating what bodily injury he had caused the girl.

Metcalf married his second wife, Angela, when he was twenty-five and was with her for six years. He described their marriage as unhealthy because they had an open relationship and both had multiple partners. He testified that the offenses for which he was then incarcerated occurred in August and September 2007, while he was married to Angela. His description of the details of those offenses was consistent with Turner's testimony, and he admitted that he "probably" encouraged Angela in her actions and that he watched two of the encounters. He

11

denied that he was sexually aroused watching those encounters. He also denied intentionally encouraging Angela and claimed he had no recollection of actually encouraging or pressuring her to have sex with the boy. Metcalf admitted that in his deposition, he denied having any knowledge of the encounters until two years later, but that he had admitted to Turner and Self that he did. He also admitted to the steps he took to conceal his involvement, consistent with Turner's testimony.

Metcalf claimed that his sex drive is practically nonexistent, although he admitted that he thinks about sex. He denied being sexually attracted to little girls, to little or teenage boys, or to men, but he admitted to being attracted to adult women. He claimed that the only thing he did wrong with regard to the thirteen-year-old victim was telling his wife she could do what she wanted and not stopping it. Metcalf admitted that he previously had a problem with sexual behavior because he was a womanizer and let his sexual appetite lead him to things that caused problems. He testified that his womanizing is what led him to watch Angela have sex with the thirteen-year-old. He also admitted that he has deviant fantasies, which he understood to be anything that's harmful to somebody else, objectifying, non-consensual, or age inappropriate. However, he claimed those fantasies only had to do with adult women and not children.

At the time of trial, he was engaged to the mother of a fellow inmate. Metcalf testified that his fiancée, his parents, and his brother and sister all support him and that they will help him with housing and bills until he gets on his feet. He planned to apply for Social Security disability and to get a job if he is denied. He also testified regarding the certificates he had received while in prison and that he had completed the sex education portion of the sex-offender treatment program. He admitted that that program had only begun to address his offenses against the thirteen-year-old

victim and had not addressed the offenses against the five-year-old girls or his indecent exposure offense.

### C. Standard of Review

Although the commitment of a person as a SVP is a civil proceeding, because the burden of proof is beyond a reasonable doubt, we review legal sufficiency of the evidence under the appellate standard of review used in criminal cases. *In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.)). "We consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt the elements required for commitment." *Id.* (citing *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied)).

In reviewing factual sufficiency of the evidence, we weigh all the evidence and "consider 'whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial.'" *Id.* (quoting *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied)); *see In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.). "[W]e view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding beyond a reasonable doubt." *In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied) (quoting *In re Commitment of Gollihar*, 224 S.W.3d 843, 846 (Tex. App.—Beaumont 2006, no pet.)). We will reverse and grant a new trial only if, after weighing the evidence, we determine that "the risk of an injustice remains too great to allow the verdict to stand." *Id.* at 213.

In conducting our review, we give deference to the jury, which "is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Harris*, 541 S.W.3d at 327 (citing *Mullens*, 92 S.W.3d at 887). Further, "[t]he jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony." *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (citing *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

### D.  Analysis

#### 1.  Metcalf's Preliminary Legal Argument

In his brief, Metcalf makes a preliminary legal argument that the statutory definition of "behavioral abnormality" and the "increased risk" language of *Bohannon* must be interpreted in light of the legislative history of Chapter 841, the legislative findings contained in Section 841.001, and the federal constitutional requirement that civil commitment must be reserved for the very few dangerous sex offenders who have serious difficulty controlling their behavior. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.002(2); *Crane*, 534 U.S. at 413; *Bohannan*, 388 S.W.3d at 303; *see also In re Commitment of Stoddard*, No. 02-17-00364-CV, 2019 WL 2292981 (Tex. App.—Fort Worth May 30, 2019, pet. filed) (mem. op.). As previously noted, the United States Supreme Court has held that in a SVP civil commitment proceeding, there must be proof of the defendant's serious difficulty controlling his behavior. *Crane*, 547 U.S. at 413. The Court recognized that this proof would take into account evidence of the severity of the psychiatric diagnosis and mental abnormality in order to distinguish the dangerous sex offender from the typical recidivist. *Id.* The legislative findings in Section 841.001 also recognize the interaction

14

between the mental or behavioral abnormality and the lack of control that makes the dangerous sex offender likely to engage in predatory acts of sexual violence.[6]

We have previously set forth the statutory criteria and definitions under Chapter 841 necessary to support a civil commitment of a SVP. These criteria and definitions, which were submitted to the jury, "describe[] the severity of the behavioral abnormality[,] . . . the severity of the danger which must be present[,] . . . [and the] behavior caused by an abnormality that makes the person a menace to the health and safety of another person." *In re Commitment of Almaguer*, 117 S.W.3d 500, 505 (Tex. App.—Beaumont 2003, pet. denied). Consequently, when the jury found that Metcalf was a SVP, that finding encompassed a finding that he had a serious difficulty controlling his behavior and that he was a dangerous sex offender. *See In re Commitment of Williams*, 539 S.W.3d 429, 446 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Almaguer*, 117 S.W.3d at 505; *In re Commitment of Browning*, 113 S.W.3d 851, 862–63 (Tex. App.—Austin, 2003, pet. denied). Thus, the statutory criteria and definitions under Chapter 841 necessary to support a civil commitment of a SVP and the jury findings based on those criteria and definitions encompass both the constitutional requirements under *Crane* and the legislative findings in Section 841.001. Therefore, we believe our sufficiency analysis should focus on whether the evidence was sufficient to support the jury's determination that the State had established the requisite elements to support its finding that Metcalf was a SVP and that have been challenged on appeal.

---

[6]*See* TEX. HEALTH & SAFETY CODE ANN. § 841.001 ("The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence.").

## 2. Legally Sufficient Evidence Supports the Jury Finding

In his first and second issues, Metcalf only challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). In support of his challenge, Metcalf first argues that Turner's and Self's testimony regarding the statements they reviewed in his 2001 case for indecency with his girlfriend's five-year-old daughter cannot be used as a basis to support their pedophilic disorder diagnosis and their opinions that he suffered from a behavioral abnormality.

Metcalf does not dispute that in a SVP civil commitment proceeding, an expert "may disclose details regarding the underlying facts or data that the expert relied on in arriving at her opinion." *In re Commitment of Stuteville*, 463 S.W.3d 543, 554–55 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied); *see* TEX. R. EVID. 705(a)). Nor does Metcalf dispute that these statements supported the experts' opinions that he suffers from pedophilic disorder and that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[7] Rather, Metcalf argues that that evidence was an improper collateral attack on a judgment of conviction for assault and that it was a violation of collateral estoppel and res judicata principles. Therefore, he reasons, that evidence cannot be considered as a basis to support the experts' opinions. Consequently, he argues, the experts' opinions are conclusory.

---

[7]In a SVP commitment proceeding, "having an expert explain the facts he considered, including past sexual offenses, and how those facts influenced his evaluation, assists the jury in weighing the expert's opinion on the ultimate issue." *Stuteville*, 463 S.W.3d at 555 (citing *In re Commitment of Young*, 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.)).

16

As Metcalf acknowledged in his brief, he did not object to the evidence at trial. Generally, "[w]hen a scientific opinion is not conclusory but the basis offered for it is unreliable, a party who objects may complain that the evidence is legally insufficient to support the judgment." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 817–18 (Tex. 2009) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711–12 (Tex. 1997)). "An objection is required to give the proponent a fair opportunity to cure any deficit and thus prevent trial by ambush." *Id.* at 817 (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998)). However, "when expert testimony is speculative or conclusory on its face . . . then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility." *Id.* at 817 (quoting *Coastal Transp. Co. v. Crown Cent. Petro. Corp.*, 136 S.W.3d 227, 233 (Tex. 2004)). An opinion is conclusory "if no basis for the opinion is offered, or the basis offered provides no support" for the opinion. *Id.* at 818.

Metcalf seeks to come under this latter rule by arguing that the unobjected-to testimony should not be considered at all since it is allegedly a collateral attack on a prior judgment and that it violates collateral estoppel and res judicata principles. This argument is without merit. "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (citations omitted). In this case, the experts' testimony regarding the statements they reviewed concerning the 2001 case did not attempt to avoid the binding force of Metcalf's judgment of conviction and were not offered in an attempt to obtain some relief barred

17

by that conviction. Rather, the testimony was offered for the purpose of disclosing to the jury the "details regarding the underlying facts or data that the expert[s] relied on in arriving at [their] opinion." *Stuteville*, 463 S.W.3d at 554–55 (citing TEX. R. EVID. 705(a); *Anderson*, 392 S.W.3d at 882). Further, both collateral estoppel and res judicata are affirmative defenses. TEX. R. CIV. P. 94; *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 813 n.1 (Tex. App.—Texarkana 2004, pet. denied). As such, they must be pled and proved at trial by the party asserting them. *Freeman*, 145 S.W.3d at 813 n.1. At the trial of this case, Metcalf neither pled nor proved the applicability of those affirmative defenses to bar the experts' testimony concerning his 2001 case. Because the testimony was not a collateral attack on the prior judgment, and Metcalf did not plead and prove that collateral estoppel or res judicata would bar the testimony, we find that the experts' testimony regarding the statements they reviewed in Metcalf's 2001 case for indecency with his girlfriend's five-year-old daughter may be considered probative evidence.[8] Since it is undisputed that this testimony supported the experts' opinions that Metcalf suffers from pedophilic disorder and that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, we find that their testimony was not conclusory.

Metcalf also argues that the evidence is legally insufficient because the evidence showed that during his "free-world life" between 1994 and 2009 when he began his current incarceration,

---

[8]In his factual sufficiency challenge, Metcalf argues, without explanation, that it would be "clearly unjust" to allow that testimony as a basis to support the pedophilic disorder diagnoses. Since this testimony was probative evidence, and its use by the experts in support of their diagnoses was subject to challenge by cross-examination, the jury was free to weigh it in considering whether to accept the experts' opinions. Under these circumstances, we cannot say that its use was unjust.

18

he was able to control himself 99.9989% of the time.[9]  Therefore, he argues, this shows that he is no more dangerous than he was before his incarceration.

However, the evidence showed that Metcalf was a SVP that was a danger to others both before and after his current incarceration.  We note that prior to his current incarceration, Metcalf committed a second sexually violent offense against a five-year-old female victim, even after he had been caught and punished for a prior sexually violent offense against a different five-year-old female victim.  After being caught and punished for the second offense, Metcalf committed five more sexually violent offenses against a thirteen-year-old victim.  Two factors that increase the risk of committing sexually violent offenses in the future noted by Turner and Self were (1) reoffending after being caught and punished and (2) offending against different types of victims.

Further, the testimony of Turner and Self showed that Metcalf's pedophilic disorder and adult antisocial behavior also pre-existed his current incarceration.  Both Turner and Self testified that those disorders were chronic and would not simply go away.  Turner also testified that antisocial orientation and deviant sexual interest were the two top risk factors for predicting future

---

[9]We note that there was no evidence at trial that supports this argument.  The evidence showed that between 1994 and 2007, Metcalf committed seven sexually violent offenses.  Turner also testified that sexual offenses are under-reported and that sexual offenses against children are grossly under-reported.  Under this evidence, any conclusion that Metcalf committed *only* seven sexually violent offenses or conversely, that he committed additional unreported sexually violent offenses, would be equally speculative.

In addition, the State is only required to prove that Metcalf has a behavioral abnormality that makes him *likely* to engage in a predatory act of sexual violence.  "Likely" is not defined under the statute, and it does not require any kind of numeric value to determine whether the defendant is likely to reoffend.  *In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012, pet. denied); *see also In re Commitment of Manuel*, 01-18-00650-CV, 2019 WL 2458986, at *5 (Tex. App.—Houston [1st Dist.] June 13, 2019, no pet. h.) (mem op.); *In re Commitment of Riojas*, 04-17-00082-CV, 2017 WL 4938818, at *4 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.).  Rather, the import of "likely to engage in a predatory act of sexual violence" is an "increased risk."  *Bohannan*, 388 S.W.3d at 303.

risk of reoffending. When both of those factors are present, Turner opined that the risk of committing future sexually violent offenses was especially high. Based on their review of documents related to Metcalf's prior offenses and current incarceration and their interviews with Metcalf, both Turner and Self opined that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence and discussed the underlying facts that supported this opinion, as set forth above.

When viewed in the light most favorable to the jury verdict, we find that on this evidence any rational jury could have found beyond a reasonable doubt that Metcalf has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Therefore, we find that legally sufficient evidence supports the jury finding. We overrule Metcalf's first issue.

### 3. Factually Sufficient Evidence Supports the Jury Finding

In support of his factual insufficiency challenge, Metcalf first argues that the evidence is insufficient to support a finding that he is an "extremely dangerous" or "worst of the worst" sex offender. Even so, these terms are not included in the statutory definition of "sexually violent predator." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). Consequently, the State was not required to prove that Metcalf was an extremely dangerous or worst of the worst sex offender. *See In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *3 (Tex. App.— Dallas Jan. 30, 2019, no pet.) (mem. op.); *see Riojas*, 2017 WL 4938818, at *4.

Metcalf also points to *Stoddard*, a recent split decision by a three-judge panel of the Fort Worth Court of Appeals that sustained a factual sufficiency challenge. *See Stoddard*, 2019 WL 2292981. Metcalf argues that the evidence is factually insufficient because his offenses pale

20

in comparison to Stoddard's offenses, he scored the same as Stoddard on the Static-99R, and he scored eight points less than Stoddard on the PCL-R. We disagree.

Our task in a factual sufficiency review is to consider all the evidence presented in *this* case in a neutral light and then determine whether the jury was rationally justified in finding the requisite elements beyond a reasonable doubt. *See Day*, 342 S.W.3d at 206. Comparing isolated facts appearing in other reported SVP commitment cases, such as the seriousness of the underlying offenses or scores on risk assessment guidelines and psychopathy checklists, should not be part of this review.[10] First, isolating and comparing individual pieces of evidence unduly emphasizes that evidence while discounting the remaining evidence present in both cases, which is contrary to the factual sufficiency review standard. Further, the evidence presented in other cases was not before the jury in this case, and the factual sufficiency standard of review does not include considering evidence not before the jury.

In this case, the jury heard evidence of Metcalf's seven sexually violent offenses and the details of the victims against whom he offended. Turner and Self detailed the risk factors

---

[10]Sexually violent offenses are defined in Chapter 841 and include less serious offenses such as indecency with a child and more serious offenses such as aggravated sexual assault. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(8). Limiting a SVP finding to only those offenders that committed the more serious offenses listed in Section 841.002(8) would effectively negate the Legislature's clear intent to include the less serious offenses listed in the statute as sexually violent offenses.

Regarding the Static-99R and PCL-R scores, our sister courts of appeals have sustained SVP findings when the Static-99R and PCL-R scores were less than, or the same as, Metcalf's. *See, e.g.*, *In re Commitment of Hicks*, No. 09-17-00186-CV, 2019 WL 1067480, at *3 (Tex. App.—Beaumont Mar. 7, 2019, pet. denied) (mem. op.) (Static-99R score of one, PCL-R score of eighteen); *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *4, *6 (Tex. App.—Dallas Feb. 20, 2018, no pet.) (mem. op.) (Static-99R score of two or three, PCL-R score of nineteen); *In re Commitment of Gray*, No. 03-16-00662-CV, 2018 WL 911863, at *4 (Tex. App.—Austin Feb. 16, 2018, no pet.) (mem. op.) (Static-99R score of one); *In re Commitment of Roberts*, No. 09-14-00475-CV, 2016 WL 637923, at *3 (Tex. App.—Beaumont Feb. 18, 2016, no pet.) (mem. op.) (Static-99R score of zero). Further, these scores are only two of a number of pieces of evidence a jury may weigh when considering the expert's and other testimony to determine whether the person is a SVP. *See, e.g.*, *Williams*, 539 S.W.3d at 440–41.

evidenced by those offenses, as well as by the subsequent actions and statements of Metcalf, that supported their diagnoses of pedophilic disorder and adult antisocial behavior. Turner and Self also testified regarding how each of the risk factors increased Metcalf's likelihood of committing violent sexual offenses in the future and how those factors supported their opinion that Metcalf has a behavioral abnormality that makes him likely to commit predatory acts of sexual violence. The jury also heard testimony from Turner, Self, and Metcalf regarding the protective factors that might reduce his risk of reoffending. It was the jury's province to weigh this evidence, judge the credibility of the witnesses and the expert's opinions, and to resolve any conflicts in the evidence. *Williams*, 539 S.W.3d at 440–41. It was also free to believe all, part, or none of a witness's testimony. *Mullens*, 92 S.W.3d at 887.

Considering all the evidence in a neutral light, we find that the jury was rationally justified in determining, beyond a reasonable doubt, that Metcalf was a sexually violent predator. *See Day*, 342 S.W.3d at 206. Therefore, we find that factually sufficient evidence supports the jury's finding, and we determine that in this case, there is not a risk of an injustice that would require a new trial. *See id.* at 213. We overrule Metcalf's second issue.

## II.    Metcalf's Non-Meritorious Complaint

In his third issue, Metcalf asserts that he is entitled to a new trial because the State's experts' opinions were based on an incorrect definition of "behavioral abnormality." Metcalf claims that the experts defined "behavioral abnormality" such that, "as long as there is any 'increased risk' (or 'more than a mere possibility') of offending no matter how small," the definition was satisfied. We have reviewed the pages of the record that Metcalf cites in support of

22

his contention, and we have determined that the testimony does not support the contention. To the contrary, the record shows that both Turner and Self based their opinions—that Metcalf has a behavioral abnormality—on the statutory definition.

Turner testified that he was at trial "to testify as to [his] opinion as to whether or not Mr. Metcalf suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence." The statutory definition was displayed, Turner explained the definition to the jury, and then Turner stated that he was looking for a behavioral abnormality based on the definitions contained in the Texas Health and Safety Code. He went on to describe the different things he examined to determine if the person "meets criteria, by definition, for having -- suffering from this behavioral abnormality." Near the conclusion of his testimony, Turner again testified that using the definition for behavioral abnormality set out in the Texas Health and Safety Code, in his opinion, "Metcalf suffers from a behavioral abnormality that affects his emotional or volitional capacity and predisposes him to engage in sexually [violent] offenses such that he is a menace to the health and safety of others."

Self also testified that he was tasked with giving his opinion of whether Metcalf fit the description of a behavioral abnormality contained in Chapter 841. He both read the definition and gave his understanding of the definition of behavioral abnormality that comported with the statutory definition. After he explained the bases of his opinion, Self opined that Metcalf had a behavioral abnormality, as that term is defined in the statute.

Thus, both Turner's and Self's opinions were based on the correct, statutory definition of behavioral abnormality. Since the record does not support Metcalf's contention that Turner's and

23

Self's opinions were based on an incorrect definition of "behavioral abnormality," we find that this complaint is without merit. We overrule Metcalf's third issue.

## III. Disposition

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:     February 7, 2020
Date Decided:       March 18, 2020

24